Nelson agt. Luling.

# N. Y. SUPERIOR COURT.

PETER NELSON, plaintiff and appellant, agt. CHARLES LULING,
ISAAC TAYLOR, FRANCIS W. G. BELLOWS and HENRY C.
CALKIN, defendants and respondents.

The plaintiff brought his action against the defendants as incorporators
and directors of a company formed pursuant to the general laws of the
state for ocean steam navigation, under the name of "The New York
and Bremen Steamship Company," charging them, first, with fraudulently
and corruptly combining to organize said company for the purpose of
deceiving such of the public as might be induced to become stockholders
therein; and secondly, with inducing, by false and fraudulent representa-
tions, the plaintiff to purchase twenty-seven shares of the capital stock
of the par value of $100 each.

*Held*, that the facts and circumstances shown by the plaintiff, including
his own evidence, when considered in its entirety, fell quite short of
establishing that the New York and Bremen Steamship Company was
organized by the defendants with the intent of deceiving and cheating
the public or the plaintiff. Fraud in such a case cannot be presumed, but
must be affirmatively established.

*Held*, also, that before the plaintiff can recover for alleged false representa-
tions made to him at the time of subscribing for the stock, it is essential
that he should satisfactorily prove that the representations were fraudu-
lently made; that they were not only false in fact, but that they were
made with the intent to deceive. This intent may be inferred from
evidence showing that the party making them knew of their falsity at
the time, or, at least, professed knowledge of their truth, when, in fact,
he was conscious that he had none. But, in either case, falsehood
uttered with intent to deceive is essential. Plaintiff's proof was not
only deficient upon the question of fraudulent intent, but also upon
the question of the falsity of the representations as to existing facts.

*General Term, November*, 1873.

*Before* BARBOUR, *C. J.*, MONELL *and* FREEDMAN, *JJ.*

APPEAL from judgment.

EDWARD D. McCARTY & GEORGE W. VAN SLYKE, *for appellant.*

T. C. T. BUCKLEY, & JAMES K. HILL, *for respondents Luling, Taylor and Calkin*

JAMES P. LOWERY *for respondent Bellows.*

*By the Court,* FREEDMAN, *J.*—This is an appeal by plaintiff from a judgment entered upon the dismissal of his complaint at a trial before the court and a jury. The action was brought against the defendants as incorporators and directors of a company formed pursuant to the general laws of the state of New York for ocean steam navigation, under the name of "The New York and Bremen Steamship Company," and the complaint charged them, first, with fraudulently and corruptly combining to organize said company for the purpose of deceiving such of the public as might be induced to become stockholders therein; and secondly, with inducing, by false and fraudulent representations, the plaintiff to purchase twenty-seven shares of the capital stock of the par value of $100 each.

The evidence showed that the plaintiff was originally a stockholder, and creditor for work done, of a steamship company called "The North American Lloyd," which owned three steamships named, Atlantic, Baltic and Western Metropolis, for which the sum of $965,000 had been paid or secured to be paid. No one of the defendants was a stockholder in this company, except Calkin; but the Pacific Mail Steamship Company held a first purchase-money mortgage on the Atlantic and Baltic, and the defendant, Charles Luling, on behalf of his house here and some of his correspondents abroad, was a large creditor, and as such held subordinate mortgages upon the three steamships. In the fall of 1866, in consequence of the German war, the company failed, with liabilities amounting to about $1,400,000, and Calkin was appointed receiver. Among the said liabilities was one of $5,000 to the plaintiff, which was entirely unsecured.

Nelson agt. Luling.

Luling and the Pacific Mail Steamship Company then determined to foreclose their respective mortgages, in order to acquire a title which would be not only absolute upon its face, but would also be free and clear from the claims of the general creditors of the North American Lloyd. This was accordingly done, and the three steamships were sold and bought in by the defendant, Taylor, in their interest and on their behalf. Their further design, in doing this, was to form a new company, into which the said steamsphips were to be put, and the shares of which were to be divided between Luling and the Pacific Mail Steamship Company, in certain proportions, as provided by a written agreement entered into for that purpose.

In pursuance to such agreement the New York and Bremen Steamship Company was formed with a capital. stock of $1,000,000.

This stock was subscribed for by seven persons, as follows: Francis Skiddy, $5,000; Charles Luling, $140,000; F. W. G. Bellows, $5,000; John T. Hanneman, by Charles Luling, $5,000; Harvey C. Calkin, $5,000; James K. Hill, $5,000; Isaac Taylor, $835,000. They met and they executed, and on the 24th of January, 1867, filed a certificate of incorporation as required by statute, and the defendant, Taylor, was elected president and treasurer.

To this company Taylor offered to sell the three steamships in question for $1,000,000 in cash, and the assumption, by the Company, of the payment of the claims held by Luling and his correspondents against the North American Lloyd and the steamer Western Metropolis, less $150,000, subscribed by Luling for himself and Hanneman for the stock of the new company. This offer was accepted by the board of directors of the company, and Taylor, as treasurer, was directed to pay to himself, individually, the said sum of $1,000,000, upon the receipt of a conveyance of the ships. The conveyance was made, and the manner in which the subscriptions were paid in and the money paid over to Taylor was as fol-

lows: The Pacific Mail Steamship Company, undertaking to pay for the subscriptions of Taylor, Calkin, Skiddy and Bellows, handed to Taylor, on four separate occasions, between the 30th of January and the 20th of February, 1867, checks to the aggregate amount of $850,000. As each check was received, it was deposited by Taylor in bank to the credit of the company, and thereupon a check for an equal amount was drawn by Taylor, as treasurer, to his own order, and that was indorsed and delivered by him to the Pacific Mail Steamship Company. Luling undertaking to pay for his subscription and that of Hanneman and Hill, on the 23d of January, 1867, handed to Taylor a check for $150,000, which was also deposited by Taylor in bank to the credit of the company, and out of the proceeds of which $110,000 were paid to Duncan & Sherman, in satisfaction of a mortgage held by them on the Western Metropolis, which, as between the company and himself, Luling was bound to satisfy. The remaining $40,000 were retained to work the line.

It was also a part of the original arrangement under which the New York and Bremen Steamship Company was gotten up, that any creditor of the North American Lloyd, who desired so to do, might acquire an interest in the new company by the purchase of stock at fifty cents on the dollar and the transfer of his claim. The plaintiff, as such a creditor, elected to avail himself of this provision to the extent of taking $2,700 worth of new stock. In order to give that amount, Taylor, who held the stock subscribed for by him in the form of a certificate issued to him as trustee, surrendered the same and had new certificates issued in place thereof. One of these, representing plaintiff's stock, was issued directly to the plaintiff on the 20th of March, 1867, and he paid for it by giving Taylor a check for $379, his note for $1,000, payable six months after date, and a transfer of his old claim.

On the 23d of March, 1867, a second certificate was filed, which had been executed by the defendant, Taylor, as president, and by the defendants Luling, Bellows and Calkin, as

Nelson agt. Luling.

a majority of the trustees of the New York and Bremen Steamship Company, and which stated that the whole of the capital stock of said company had been paid in.

On the 31st of March, 1867, the company, in pursuance of the terms of its purchase, gave a mortgage to Charles Luling & Co. on the three steamships, to secure the sum of $330,126.67, being the balance due to Luling and his correspondents from the North American Lloyd, with the $150,000, the amount of their stock subscriptions, deducted.

The New York° and Bremen Steamship Company did not prosper, and the Pacific Mail Steamship Company, refusing to furnish any more means to carry on the line, it was, on the 27th of February, 1868, resolved to wind up its affairs. All current expenses and debts having been paid, and there being no creditor outside of the parties who had gotten it up, the company ceased to do business. The steamships were sold, and the proceeds applied to the payment of the mortgage held by Luling, and all parties lost what they had put in.

There was no proof that a prospectus had ever been issued, or that subscriptions for the stock had been solicited or authorized by the company to be solicited, or that any stock was sold to outside parties. The whole arrangement seems to have been a scheme, by the two heaviest and preferred creditors of an insolvent corporation, to reorganize it upon the basis of the property to be saved, and the other creditors had their election to come in upon certain conditions. Now, whether these conditions were fair or otherwise, whether in the organization of the new company the requirements of the law of this state as to the payment of the capital stock in cash were really complied with or evaded by a mere technical performance, whether the directors of the new company observed reasonable care and caution in the management of the affairs of the company, or were guilty of recklessness, extravagance and excessive liberality in purchasing the three steamers at the price paid therefor, and in assuming the payment of Luling's claims against the same, or whether the

creditors of such new company, if any existed, could or could not question the validity of the mortgage subsequently executed to Luling, under which the entire property was finally swept away, are questions which do not necessarily control the final decision of this case.

They fail, standing alone, to show fraud, while it is upon fraud that plaintiff relies as his cause of action. They are, therefore, mere circumstances to be considered and weighed with the other testimony in the case. But plaintiff's evidence, when considered even in its entirety, fell quite short of establishing that the New York and Bremen Steamship Company was organized by the defendants with the intent of deceiving and cheating the public or any of the creditors of the North American Lloyd by palming off upon them worthless shares of its stock. Fraud, in a case like this, cannot be presumed, but must be affirmatively established. The certificate which stated that the capital had been fully paid in was filed after plaintiff had completed the purchase of his stock, and consequently he cannot have been mislead by it.

The only remaining inquiry, therefore, relates to the representations, if any, that were made to the plaintiff at the time he took the stock. His testimony upon this point shows that in relation to this matter he had no conversation with the defendants, Luling and Bellows, or any one in their behalf, and the complaint was therefore properly dismissed as against them.

As to Calkin and Taylor, plaintiff showed that the first intimation of the formation of the new company which he received came from Calkin, who informed the plaintiff that he, the plaintiff, could come in and convert his old claim into new stock by a payment of fifty cents on the dollar. The plaintiff inquired what Calkin thought about it and the latter replied : "It is a good company; we have formed it; the capital is all paid in ; you go to No. 40 Broadway to Isaac Taylor and get new stock for your old claim and you will get the work of the new company. It is going to be the biggest

company in New York." Plaintiff thereupon did go to the place named and there told Taylor what Calkin had said, and Taylor replied : " That is so ; the capital stock is all paid in ; everything is all right and we will go on swimmingly." On his cross-examination plaintiff admitted that he had no doubt that whatever Calkin said to him, he, Calkin, believed to be true ; and that whatever Calkin or Taylor told him, he, the plaintiff, understood to be mere matter of opinion as to the condition and prospects of the company. In this connection it is to be observed that the defendant, Taylor, who had been called as a witness on behalf of the plaintiff, testified on his cross-examination that at the time of the organization of the company he believed that the enterprise would prove a success. For such representations no action lies, for, before a plaintiff in an action like this can recover, it is essential that he should satisfactorily prove that the representations were fraudulently made ; that is to say, that they were not only false in fact, but that they were made with the intent to deceive. This intent may be inferred from evidence showing that the party making them knew of their falsity at the time, or at least professed knowledge of their truth, when, in point of fact, he was conscious that he had none. But in either case falsehood uttered with intent to deceive is essential. The presumption is in favor of innocence, and on that account the intent or design to deceive the plaintiff must be affirmatively made out by evidence ( *Wakeman* agt. *Dalley*, 51 *N. Y.*, 27 ; *Chester* agt. *Comstock*, 40 *N. Y.*, 575, 576 [note] ; *Marsh* agt. *Falker*, 40 *N. Y.*, 562 ; *Weed* agt. *Case*, 55 *Barb.*, 547). Of course such intent or design can only be proven by facts and circumstances, but one of these must clearly show willful falsehood. When that is brought home the other facts become tainted by it and may all be construed in the light which the intentional falsehood casts upon them. But without it the presumption of fair dealing will control. The statement that the capital stock had been all paid in was at least technically true, and the other statements involved mere

matters of opinion. Plaintiff's proof was, therefore, not only deficient upon the question of fraudulent intent, but also upon the question of the falsity of the representations as to existing facts. Moreover, it fully appeared by Taylor's testimony, and without contradiction by the plaintiff, that Taylor told and explained to the plaintiff the organization of the company; that plaintiff knew as much about it as Taylor did; that, among other things, Taylor told plaintiff that the money given by the Pacific Mail Steamship Company had been returned, and that under the circumstances the company did not have a working capital; and finally it appeared that plaintiff was acquainted with the trade and with steamships and their value; that the three steamers in question were really worth over $500,000; that the plaintiff by the purchase of his stock and as part of the bargain for its purchase secured the painting of said steamers; that he performed between $4,000 and $5,000 worth of work on them; that he paid his note of $1,000 with bills for part of such work, and that he received his money for the balance.

Upon the whole case it is therefore impossible to arrive at the conclusion that the plaintiff was induced to purchase the stock by means of and in reliance upon representations which were false and fraudulent within the true and legally established meaning of the words.

The complaint was properly dismissed against all the defendants; and as the other exceptions in the case cannot affect the final result, the judgment appealed from must be affirmed, with costs.

BARBOUR, C. J., and MONELL, J., concurred.